**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SAMUEL JACKSON,

    Plaintiff,

v.                                                                                    Case No. 09-11438

CITY OF FLINT, et al.,

    Defendants.
                                         /

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

Individual Defendants Justin Broughton, Blake Hiben, and Shawn Morey have filed a motion to dismiss. Defendant City of Flint has also filed a motion to dismiss. After a review of the filings, the court has determined it unnecessary to hold a hearing on the motions. E.D. Mich. LR 7.1(f)(2). Both motions will be denied.[1]

## I. BACKGROUND

Although the facts and legal questions at issue at this early stage of litigation are relatively simple, the procedural history has already become regrettably convoluted. And while the issues raised by Defendants are few, the filings are unfortunately numerous. The court therefore will briefly summarize the procedural history of this action before setting it aside to address the relevant factual background and merits of the pending motions.

---

[1] In addition to the motion filed by all three individual Defendants, also pending before the court is a motion to dismiss filed by Defendants Broughton and Morey before Defendant Hiben was brought into the case. Because the basis for relief sought in that motion is identical to that underlying the motion filed by all three defendants, it will be disposed of in the same manner. A fourth "supplemental motion" will also be denied.

**A. Procedural History**

The procedural run-up to this order caused no small amount of confusion. Typically, a motion is filed by one side in the case, and then a response is filed by the other. The moving parties are then permitted to file an optional reply if they have more to say. *See generally* E.D. Mich. LR 7.1.

Here, Defendants Broughton and Morey first filed their motion to dismiss, which was fully briefed: a response was filed, and then a reply. After the court took steps to bring previously unserved Defendant Hiben into the case,[2] all three individual Defendants filed substantially the same motion, this time with Hiben in the fold. Shortly thereafter, the city moved to dismiss. Plaintiff responded to the city's motion, but did not respond to the (second) individual Defendants' motion. The city then replied to that response, and purportedly also filed the reply in support of the individual Defendants' motion. Thereafter Plaintiff sur-replied to the city's motion.

Thus, the city's motion wound up over-briefed with an extra reply, while the individual Defendants' motion went under-briefed, without even a response. Because the individual Defendants' motion was essentially briefed once already, the court will treat the briefing responsive to Defendant Broughton and Morey's first motion as responsive to the latter individual Defendants' motion.

---

[2] As pro se Plaintiff is currently incarcerated, the United States Marshals Service undertook the task of serving Defendants. The court was notified of the successful service of Defendant Hiben on February 22, 2011, even though he was apparently served in November 2010. The court held a telephone conference with Plaintiff and Defendants' counsel on March 9, 2011, during which it was agreed that Defendants' counsel, the city attorney who would likely represent (and in fact is now representing) Defendant Hiben, would reach out to him. (*See* 3/11/11 Order.)

Meanwhile, Plaintiff moved for leave to file an amended complaint, and then, before the court ruled on the motion, Plaintiff filed what was his second amended complaint shortly before the city filed its motion to dismiss.  The court granted Plaintiff's motion in a June 10, 2011, order.  To afford Defendants an opportunity to respond to the new allegations in the amended complaint, the court allowed Defendants to file a supplemental motion to dismiss.  That "motion" has now been fully briefed, as well, and is pending before the court.

In sum, there are now four motions under consideration, most of which have had multiple responsive pleadings.  All of the documents, however, raise at most the same handful of issues.  As noted above, the motions will be denied.

### B. Factual Background

Plaintiff filed his twenty-seven page second amended complaint on April 1, 2011.  The complaint states that on January 15, 2008, Plaintiff was returning from his grandmother's house with $2,300 in cash she had given him when he stopped to pick up dinner for himself and his wife at a fast-food restaurant.  (Dkt. # 69 ¶¶ 29-32.)[3]  Plaintiff's wife called him and told him she had already made dinner, so he left the drive-through lane to return home.  (*Id.* ¶ 32.)  Searching for, but unable to find, the envelope containing the money while driving, "Plaintiff pulled into the closet [sic] driveway posslble [sic]" to carefully and safely look for the envelope.  (*Id.* ¶¶ 33-34.)

---

[3] Because of the numerous filings relevant to the motion to dismiss, the court will cite court documents by docket number rather than by name.  In addition, because of redundancies in pagination, the page numbers in the citations are those corresponding to the page assigned by the docket and located in the header of the electronically-filed document, and not to the page number inserted by the litigant.

While his car was parked, Plaintiff's complaint states, Flint Police Officer Justin Broughton shoved a handgun in his face and said, "I'm gonna beat your ass." (*Id.* ¶ 34.) This began an alleged brutal assault by three police officers, the individual Defendants in this case, that ended with Plaintiff's arrest. (*Id.* ¶¶ 35-37.) Plaintiff avers that the officers planted and then "found" a gun in his vehicle. (*Id.* ¶ 41.) He also claims that after the arrest, he was denied medical care. (*Id.* ¶¶ 39-42.)

As a result of this incident, Plaintiff was charged with various offenses including carrying a concealed weapon, felon in possession of a firearm, and resisting arrest; in addition, he was charged with violating the terms of his parole from a prior conviction. (*Id.* ¶¶ 46-47.) He alleges that during pretrial proceedings on the criminal charges, the prosecuting attorney confirmed that Plaintiff "had evidence . . . of [p]erjury, [f]alse [t]estimony and falsified [d]ocuments." (*Id.* ¶ 88.) On December 3, 2008, the criminal case against Plaintiff was dismissed because the prosecutor did not have "the physical case file," apparently because the Flint Police Department did not produce it after some of the officers were laid off. (*Id.* ¶¶ 93-96.) Plaintiff's parole was revoked after several hearings, during which, he alleges, the individual Defendants here testified, and Defendant Broughton "gave . . . [f]alse [t]estimony." (*Id.* ¶¶ 97-100.)

The complaint is not delineated into individual counts, but Plaintiff lists his claims against each Defendant toward the end of the document. Plaintiff summarizes his claims against Defendant Broughton by stating that Broughton

> intentionally denied medical attention, made False Statements and committed the crime of Assault, Excessive Force, Perjury, Falsifying Documents, making False Police Reports, False Arrest, False Imprisonment, Malicious Prosecution and Intentionally Inflicting Emotional Distress to the Plaintiff. In addition to violations of State and Federal

4

> Laws, protected and guarantees afforded to the Citizens of the United States and the City of Flint Michigan, in violation of 4th, 8th and 14th Amendments of the United States Constitution.

(*Id.* ¶ 103.)[4]  His allegations against Defendants Morey and Hiben are nearly identical, except that he does not allege those two officers perjured themselves or made false statements, though Plaintiff does maintain they fabricated documents and police reports.  (*Id.* ¶¶ 104-05.)  Finally, the city is accused of

> act[ing] with Deliberated [sic] Indifference by failing to adequately training [sic], supervise and promptly discipline it's [sic] agents / Officers when complaints were made for Unsatisfactory Performance, Excessive Force, and Police Brutality by Citizens prior to it's [sic] agents/ Officers violating Constitutional and Civil Rights of the Plaintiff evidence [sic] by Flint Police Department Incident Report 300-07, 334-07 and 33-08 in violation of 8th and 14th Amendments of the United States Constitution.

(*Id.* ¶ 102 (emphasis removed).)

## II. STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true.  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).  In doing so, the court must "draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Yet, the court "'need not accept as true legal conclusions or unwarranted factual

---

[4] The second amended complaint references violations of state law.  The "Preliminary Statement" of the document says that in addition to federal and state constitutional provisions, Plaintiff "alleges numerous violations of . . . Michigan Compiled Laws."  Paragraphs 103, 104, and 105, appearing under the heading "Claims of Relief" list many state law claims.  Because Defendants have not attacked these state-law claims, the court need not treat them here.

5

inferences.'" *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 466 (6th Cir. 2000)). Although a heightened fact pleading of specifics is not required, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Though decidedly generous, this standard of review requires more than the bare assertion of legal conclusions.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555-56 (citations omitted). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Twombly*, 550 U.S. 544. A "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Therefore, "to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level, and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citations and internal quotation marks omitted). Despite these requirements, a court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's well-pled factual allegations. *Twombly*, 550 U.S. at 555-56.

"'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis removed) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

In resolving a motion for judgment on the pleadings pursuant to Rule 12(c), "'all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)).

### III. DISCUSSION

The individual officers' motion presents two arguments for dismissal: Plaintiff's claims are implausible under *Iqbal* and *Twombly*, and in any case, they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The city's motion also asserts these two arguments, and adds two more: Plaintiff has failed to properly plead facts that would make a plausible case of municipal liability, and the individual officers are entitled to qualified immunity.[5] The court finds none of these arguments persuasive.

---

[5] On April 6, 2011, the same day the city filed its motion to dismiss raising these additional issues, the individual Defendants filed what they termed on the court's docket as a "notice of joinder/concurrence" in the city's motion. Even though the individual Defendants failed to raise the qualified immunity defense in the two chances

they had to file their own motion, presumably they believe this "notice" entitles them to have the court consider the qualified immunity claim, raised in the city's brief only in passing.
This is an improper way to raise a defense. If the individual Defendants believed

7

**A. Individual Defendants**

The individual Defendants' one-and-a-half page argument section of the motion to dismiss cites to *Twombly* and *Iqbal*, and then provides this analysis: "Plaintiff has not pleaded any facts that would allow the court to draw a reasonable inference that Defendants Morey, Broughton and Hiben are liable for the misconduct alleged. Rather, Plaintiff's allegations are completely implausible and, for this reason alone, his case should be dismissed." (Dkt. # 68 at 8.) Defendants then cite *Heck* and contend: "Because Plaintiff was sent back to prison based upon parole violations arising out of the incident of January 15, 2008; and, the parole violations having not been overturned, his claims are barred by the *Heck* rule." (*Id.*) Defendants' reply brief argues Plaintiff has no evidence in support of his claims, and observes that no court has overturned his parole violation or declared his arrest illegal. (Dkt. # 61 at 7.) The city's motion does not add more to these skimpy and conclusory arguments. (*See* Dkt. # 70 at 8-9.)

*1. Plausibility*

---

they were entitled to immunity, they should have raised it in their own 12(b)(6) motion. Therefore, the court need not reach the issue of qualified immunity but notes that, assuming that the facts as recited in Plaintiff's complaint are true, the individual Defendants violated Plaintiff's clearly established constitutional rights. *See, e.g.*, *Grawey v. Drury*, 567 F.3d 302, 309-16 (6th Cir. 2009) (right to be free from excessive force was clearly established in June 2005); *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999) (right to be free from malicious prosecution was clearly established). Thus, even if they had properly raised the defense, Defendants would not be entitled to qualified immunity, at this stage of the litigation, based on the facts as alleged in the complaint.

Of course, Plaintiff is not required, under Rule 8, *Twombly*, and *Iqbal*, to support his allegations with *evidence*. While the court may consider documents attached to the complaint and other filings in resolving a motion to dismiss, *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)), all a plaintiff must do is plead *facts* that make his claim for relief plausible on its face. As noted above, in reviewing a motion to dismiss, the district court must assume that all of the pleaded facts are true to determine whether the plaintiff's claims are plausible. The second amended complaint surely states a plausible claim for relief. Plaintiff alleges that without provocation three police officers assaulted him and subsequently planted evidence, falsified police reports, and one officer perjured himself to cover up the assault. Plaintiff alleges where the alleged constitutional violations occurred, when they occurred, and how they occurred. (*See* Dkt. # 69 ¶¶ 32-43, 49-52.) He states the provisions of the Constitution he believes were violated and the statute, § 1983, that authorizes his suit. These claims are plausible, and if true, Plaintiff would be entitled to relief, provided his claims are not proscribed by *Heck* and its progeny.

*2.* Heck *Doctrine*

*Heck* set forth an exhaustion requirement for § 1983 claims based on wrongful convictions or incarcerations.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

9

*Heck*, 512 U.S. at 486-87 (footnote omitted). Where the sentence has not been invalidated, the claim is not cognizable. *Id.* at 487. The test is straightforward: "the district court must consider whether a judgment in favor of the plaintiff would *necessarily imply* the invalidity of his conviction or sentence . . . ." *Id.* (emphasis added). Prior to *Heck*, the Supreme Court held that a state prisoner could not challenge the fact of his incarceration in § 1983 suit, and his exclusive remedy was in habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see generally Wilkinson v. Dotson*, 544 U.S. 74, 78-83 (2005) (discussing predecessors and progeny of *Heck*).

*Heck* is equally applicable to challenges to incarceration resulting from parole violations. *See Miskowski v. Martin*, 57 F. App'x 246, 248 (6th Cir. 2003); *Munofo v. Alexander*, 47 F. App'x 329, 330-31 (6th Cir. 2002); *see also Spencer v. Kemna*, 523 U.S. 1, 17 (1998) ("If . . . petitioner were to seek damages 'for using the wrong procedures, not for reaching the wrong result,' and if that procedural defect did not 'necessarily imply the invalidity of' the revocation, then *Heck* would have no application [at] all." (citations omitted) (quoting *Heck*, 512 U.S. at 482-83, 487)). *Preiser* likewise applies to suits contesting parole revocation.[6] *See Miskowski*, 57 F. App'x at 248.

Where the incarcerated plaintiff alleges excessive force or assault by an arresting officer, generally the § 1983 action will lie, because the successful suit does not necessarily imply the invalidity of the conviction. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (citing *Swiecicki v. Delgado*, 463 F.3d 489, 493 (6th Cir. 2006)). There

---

[6] Plaintiff asks explicitly only for monetary damages, but his request for damages "for every day of Plaintiffs [sic] wrongful imprisonment" implies he also seeks release from custody. (*See* Dkt. # 69 at 20-24.) To the extent he seeks release, *Preiser* forecloses that remedy.

are two exceptions. First, if the absence of excessive force is an element of the crime that was proven, resulting in the conviction that led to incarceration, *Heck* dictates the § 1983 action must be dismissed. *Id.*; *see Heck*, 512 U.S. at 486 & n.6. Second, if excessive force is an affirmative defense to the charged offense, *Heck* will bar the subsequent § 1983 suit because the fact finder in the criminal trial rejected the affirmative defense, or the § 1983 plaintiff (and criminal defendant) waived the defense by failing to raise it. *Schreiber*, 596 F.3d at 334 (citing *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005)).

Two sets of proceedings arose from the events of January 15, 2008. In addition to the parole revocation proceeding, which resulted in incarceration, Plaintiff was also criminally charged, and those charges were subsequently dismissed. Because the criminal charges were dismissed, *Heck* does not attach to allegations related to the prosecution. The *Heck* analysis thus requires the court to isolate the parole revocation investigation and adjudication from the criminal prosecution, even though the same events led to both proceedings.

The record explains the violations underlying the revocation of Plaintiff's parole, which violations may not be questioned in this § 1983 action pursuant to *Heck*. "Exhibit K" of Plaintiff's response is the "Parole Violation Worksheet and Decision" that led to Plaintiff's current incarceration. (*See* Dkt. # 60 at 53-55.) The Michigan Department of Corrections's worksheet indicates, under the heading "Current Incident Information," that Plaintiff was charged with two violations: "Firearms" and "Conduct." The circumstances that form a basis for each of those charges are not described in detail under the current incident section, but it notes that he waived any preliminary findings.

11

Under the heading "Recommendations," the parole officer and supervisors recommend that Plaintiff be returned to prison as a result of the January 15, 2008, incident. They state that the dismissal resulted from "procedural issues," namely that the "prosecutor[']s office [did] not hav[e] access to [the] case file and [the] arresting officer [was] laid off," but that an officer was "willing to testify at a parole violation hearing." They also recite facts from the police report.

Defendant Broughton's report—which has a very different view of the January 15, 2008, altercation from that presented by the complaint—provides information that sheds some light on the "conduct" violation. (*See id.* at 37-39.) Broughton's report confirms that he saw Plaintiff enter and then leave the drive-through lane of a restaurant. Morey and Broughton attempted to pull Plaintiff over because his burgundy Chevy had an "unlighted registration plate." The report states "[t]he vehicle then made a quick left . . . with out [sic] signaling," and that Plaintiff immediately left the vehicle and began running, discarding as he ran a firearm and money. Plaintiff was apprehended and the firearm was recovered in the snow. He was taken to a police station and booked on charges of carrying a concealed weapon, felony firearm, felon in possession, parole violation, and resisting and obstructing, and issued a ticket for the registration plate and failing to signal. In another section, the report repeats the charges but omits resisting and obstructing.

In view of the underlying parole violation charges, some of Plaintiff's claims are foreclosed by *Heck*, because Plaintiff's parole revocation has not been in any way invalidated or called into question. Plaintiff contends, among his other allegations, that Defendants fabricated police reports and planted evidence, and also that they falsely

12

arrested, imprisoned, and maliciously prosecuted him. To the extent that these actions allegedly were taken by Defendants in a process that led to the revocation of Plaintiff's parole and subsequent incarceration, Plaintiff may not recover on any of these bases under § 1983 because the parole revocation has not been reversed, expunged, declared invalid, or called into question.[7] Each of these bases, framed as violations of the Fourth, Eighth, or Fourteenth Amendments, would necessarily imply the invalidity of the parole revocation, and thus the court may not award damages under *Heck*.

Specifically, the revocation of Plaintiff's parole on the basis of the "Firearms" count, read in conjunction with the police report describing the underlying conduct, prohibits any § 1983 action alleging that Plaintiff did not possess the firearm. Thus, any of Plaintiff's claims that Broughton or the other officers lied about the gun (including false testimony, perjury, fabrication of evidence) are *Heck*-barred.[8] However, the "Conduct" count is more ambiguous. Certain types of "conduct" could lead to a *Heck* proscription, such as if a § 1983 plaintiff alleges excessive force but has been convicted

---

[7] Plaintiff appended the state court order of dismissal of the criminal charges as "Exhibit J" to his response to the individual Defendants' motion. The matter was dismissed without prejudice on December 3, 2008, in a one-page order dated December 16, 2008, that does not disclose the basis for dismissal. As noted above, Plaintiff's second amended complaint asserts the state court dismissed the charges against him because the police department would not produce the physical case file for prosecution. (Dkt. # 69 ¶¶ 93-95.) As the record indicates the dismissal was without prejudice, and for "procedural" reasons, the state court's order of dismissal does not invalidate or otherwise call into question the result of the subsequent parole revocation hearing, which continues to stand unabated.

[8] However, these theories of liability are *not* precluded by *Heck* to the extent that they do not address the weapon or were not relied upon to prove the parole violation. Thus, insofar as Plaintiff alleges the officers made false statements leading up to a trial for the charges that were ultimately dismissed, *Heck* does not prevent the suit from proceeding.

of resisting arrest, s*ee, e.g.*, *Coble v. City of White House, Tenn.*, 634 F.3d 865, 867 n.2 (6th Cir. 2011); *Schreiber*, 596 F.3d at 334, while other conduct would not necessarily imply the invalidity of the revocation.

Despite the Broughton report and other documents before the court, the details of the "conduct" charge are not borne out by the record, and thus the court is left to speculate as to the "conduct" that led to the revocation. The report suggests Plaintiff was fleeing and Plaintiff was charged with "resisting and obstructing," and so the court might posit that the "conduct" at issue was Plaintiff's resistance to arrest. But there is no indication in the report or otherwise that Plaintiff used physical aggression toward the arresting officers, and therefore the "conduct" violation cannot be reasonably construed to nullify an excessive force claim. In this case, Plaintiff's suit for excessive force and assault, if successful, would not necessarily imply the invalidity of the parole violation; that is, it is possible that Plaintiff was a victim of an attack at the hands of the officers, even if he possessed a firearm or attempted to evade arrest by running.[9] In any event, in the absence of any evidence or argument clearly defining "conduct," Defendants have not shown that Plaintiff's complaint fails to state a claim for excessive force or any of the other many theories of constitutional liability he advances.

Thus, Plaintiff's excessive force and assault claims are not prohibited by *Heck*. Moreover, insofar as Plaintiff's other claims—including, by way of example, malicious prosecution, fabrication of evidence, and perjury—assert an injury flowing from events

---

[9] Further, *Schreiber* held that § 1983 actions are not precluded by resisting and obstructing convictions under Michigan law. *See Schreiber*, 596 F.3d at 334-35; *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 768-69 (E.D. Mich. 2009) ("In Michigan . . . a defendant may be convicted of resisting and obstructing without necessarily committing an assault and battery.").

tied to the dismissed prosecution that preceded his parole revocation hearing, they are not *Heck*-barred, unless the successful claim would necessarily imply the invalidity of the parole revocation.[10]

The pro se second amended complaint does not identify its claims or theories by separate counts, making it a challenge for the court to clearly and definitively specify each of the separate legal bases on which Plaintiff desires relief. As explained above, while some of Plaintiff's claims are precluded by *Heck*, it is clear that others are not. The question facing the court, then, is what to do with a pro se complaint where the precise theories of liability are muddled and only some are barred by *Heck*. The court could "dismiss" some "theories" of liability from the case, or it could merely deny the motion in its entirety, leaving the case intact but providing guidance to the parties as to which claims may proceed.

The better view, at least in this case, is to deny the motion in its entirety. Because there are not separate counts and thus no section of the amended complaint may be easily severed and dismissed, and because the court is certain the case must proceed on at least some of Plaintiff's theories of liability, the court will deny the motion, rather than grant it in part and deny it in part. Discovery will hone Plaintiff's claims and Defendants' defenses,[11] and, should the case be the subject of a motion for summary

---

[10] For example, Plaintiff alleges Defendant Broughton lied about the origins of the firearm that Defendants assert was discarded by Plaintiff during a foot chase, and Plaintiff contends was planted by the officers. Plaintiff may not recover in § 1983 by proving Defendant Broughton lied about the firearm at his preliminary examination, (*see* Dkt. # 69 ¶ 87), because such a conclusion would be predicated on a determination that the firearm was not, in fact, in Plaintiff's possession, which would necessarily imply the invalidity of the parole revocation.

[10] For example, discovery may elucidate what "conduct" led to revocation.

15

judgment, the court will have a more thorough factual landscape on which to adjudicate the *Heck* defense.

### B. City of Flint

The city's motion presents three grounds for dismissal, two of which—plausibility and *Heck*—are rejected by the court for the same reasons discussed above with respect to the individual Defendants' motion. The only issue unique to the city's motion is whether Plaintiff's amended complaint has sufficiently pleaded municipal liability.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

> A § 1983 plaintiff seeking to hold a municipality liable must therefore allege that the particular injury complained of flowed from the execution of the municipality's policy or custom. But policy or custom does not have to be written law; it can be created "by those whose edicts or acts may fairly be said to represent official policy."

*Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010) (citation omitted) (quoting *Monell*, 436 U.S. at 694). "Where the identified policy is itself facially lawful, the plaintiff 'must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Plaintiff's complaint asserts one general theory of municipal liability. He argues the city was deliberately indifferent to the constitutional rights of the citizens of the City

of Flint, as evidenced by the city's failure to train, supervise, and discipline its officers. (Dkt. # 69 ¶¶ 14-15, 18, 102 & at 20.)[12]

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *see Gregory*, 444 F.3d at 753 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) ("The courts recognize a systematic failure to train police officers adequately as custom or policy which can lead to city liability."). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick*, 131 S. Ct. at 1359 (alteration in original) (quoting *Harris*, 489 U.S. at 388); *accord Gregory*, 444 F.3d at 753. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409). Accordingly, deliberate indifference may be found where a municipality has knowledge of repeated constitutional violations but takes no action. *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003) (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)); *see, e.g.*, *Oviatt v. Pearce*, 954 F.2d 1470,

---

[12] Although Plaintiff cites certain police department policies that provide for what he argues is the relatively light sanction of an oral reprimand for a first offense, and labels one as "unconstitutional on its face," he does not appear to argue that these policies caused his injuries here. It is rather what these policies do not do—adequately train and discipline the individual officers—that allegedly led to the constitutional violations at issue. Therefore, these policies are best construed to serve Plaintiff as facts in support of his theory of deliberate indifference, and not as independent policies of the city that are unconstitutional.

17

1477-78 (9th Cir. 1992); *Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991). Although a deliberate indifference theory of municipal liability resting on a "failure to train" has received most of the discussion in the case law, such a theory may also be supported by a failure to supervise or discipline. *See, e.g., Green v. Nevers*, 111 F.3d 1295, 1299 (6th Cir. 1997) (finding allegations sufficient to state a claim where complaint alleged failure to discipline, supervise, and retrain officers); *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 996 n.8 (6th Cir. 1994).

Plaintiff's complaint easily survives the city's motion to dismiss for failure to state a claim, and similarly clears the city's motion insofar as it purports to be a Rule 12(c) motion for judgment on the pleadings. The city, in the most summary fashion, argues that "Plaintiff does not specifically allege any facts from which it could be inferred that any possible violation that may have occurred was caused by a City of Flint custom or policy." (Dkt. # 70 at 9.) In a footnote, the city continues: "Plaintiff's complaint is devoid of any factual allegations from which it could be inferred that a City of Flint custom or policy caused his injuries." (*Id.* at 9 n.1.) Thus, the city says that Plaintiff has failed to plead facts in support of both 1) a custom or policy, and 2) causation.

But Plaintiff *does* allege facts that would make a claim of deliberate indifference plausible, and his complaint is not devoid of any allegations of causation. Indeed, his complaint is full of facts and allegations to support his claim of municipal liability.

Plaintiff cites three incident reports and a Flint Police Department Manual section in support of his claim that the city failed to adequately train, supervise, and discipline its officers. (Dkt. # 69 ¶¶ 15-25, 102.) The complaint says that the city has an unconstitutional written policy of giving only oral reprimands for a first offense of police

18

officer misconduct. Further, the complaint states that two of the incident reports reflect that twice in the months preceding Plaintiff's altercation, complaints were filed against Defendant Broughton, one of which involved allegations of police brutality. A third report was filed the week after Plaintiff's alleged assault describing the result of an investigation into a complaint against all three individual Defendants regarding an incident that occurred in the hours just before the Defendants arrested Plaintiff. The second amended complaint includes extensive allegations regarding his communications with, and an investigation conducted by, the city's ombudsman; the investigation resulted in a finding that Defendant Broughton had violated the Flint City Charter. (Dkt. # 69 ¶¶ 58-91; *see* Dkt. # 48 at 5.) Thus, unlike the plaintiffs in *Connick* and *Board of County Commissioners*, Plaintiff here hangs his allegation of deliberate indifference on more than a single incident of misconduct.

Plaintiff also adequately alleges causation. If the city did not take action to adequately train, supervise, and discipline the individual Defendants, and the Defendants assaulted Plaintiff, then the actions of those Defendants may be fairly traceable to the city's deliberate indifference.

The city argues it thoroughly investigated each and every of the complaints Plaintiff cites. That may be so, but the question before the court is not whether the city investigated the complaints; it is whether Plaintiff has pleaded sufficient facts to state a plausible claim for relief. The court does not consider whether the city's proffered records are sufficient to rebut the allegations in the complaint. The court is bound to accept Plaintiff's allegations as true, and looks only for the modicum of factual support that pushes the complaint across the threshold that divides the conclusory from the

19

plausible. Assuming the facts in the complaint are true, Defendant City of Flint may have failed to adequately train, supervise, and discipline these individual officers, thereby indicating its deliberate indifference to what actions they might take on the streets of Flint. Discerning whether the city in fact failed will require further litigation.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that the individual Defendants' "Motion to Dismiss" [Dkt. # 68] is DENIED. For the same reasons, Defendants Broughton and Morey's nearly identical "Motion to Dismiss" [Dkt. # 58] is DENIED.

IT IS FURTHER ORDERED that Defendant City of Flint's "Motion to Dismiss" [Dkt. # 70] is DENIED.

Finally, IT IS ORDERED that Defendants' "Supplemental Motion to Dismiss" [Dkt. # 77] is DENIED.

                                      s/Robert H. Cleland  
                                      ROBERT H. CLELAND  
                                      UNITED STATES DISTRICT JUDGE

Dated: August 12, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 12, 2011, by electronic and/or ordinary mail.

                                      s/Lisa Wagner  
                                      Case Manager and Deputy Clerk  
                                      (313) 234-5522